## Doss v. Illinois Central Railroad Company.

(Decided March 13, 1923.)

### Appeal from Muhlenberg Circuit Court.

1. Railroads—Company Not Reliable for Flooding During Federal Control.—The railroad company is not liable for the flooding of lands during the period of federal control, where the evidence showed that the flood resulted, not from the original construction of the railroad by the company, but from permitting the culverts under the embankment to become partially obstructed, since the company had no right during the period of federal control to enter on the property to remove the obstructions.

2. Dismissal and Nonsuit—What Constitutes "Final Submission to Jury."—Within Civil Code, section 371, providing that an action may be dismissed without prejudice to a future action by the plaintiff before final submission of the case to the jury, the final submission is not made until all questions of law have been disposed of by the court, the instructions and papers pertaining to the case actually delivered to the jury, and the jury authorized without further interposition by the court to proceed to a judicial examination of the issue submitted to them, so that it was error, in an action in which the defendant had filed no counterclaim, to deny plaintiff's motion to dismiss the case without prejudice, made after the evidence had been concluded, and while the court had under consideration defendant's motion for a directed verdict.

W. J. ROSS for appellant.

TAYLOR, EAVES & SPARKS and TRABUE, DOOLAN, HELM & HELM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Reversing.

Appellant Doss brought this action in the Muhlen-
berg circuit court against the Illinois Central Railroad
Company to recover damages for the destruction of the
growing crops on his farm for the years 1918, 1919 and
1920, occasioned, as he avers, by the casting of water
thereon, the flow of which was obstructed by the rail-
road embankments through which there were no suf-
ficient culverts. The railroad company answered alleg-
ing that it was not in control of or operating the said
railroad for the years 1918 or 1919 but that the said
carrier was then under federal control and being op-
erated by the Director General of Railroads, who was
not a party to the action. While this is admitted by ap-
pellant Doss he nevertheless insists that the railroad
company built the embankment in the first place and
thereby made the overflow both possible and probable,
and is liable for the damages occasioned by the embank-
ment casting water upon his crops; that the Director
General did not erect said embankment nor do anything
to change the situation after he took charge of the said
railroad. We have held in the case of Commonwealth
v. Louisville & Nashville Railroad Company, 189 Ky.
309, that a company whose property is under federal
control and being operated by the Director General of
Railroads is not subject to indictment for an alleged
violation of the Kentucky Statutes relating to the main-
tenance of waiting rooms at one of its depots, and that
the effect of federal control was to divest the railroad
companies of the possession of their property and to
place its entire custody and control and the operation
and maintenance thereof in the federal government,
through its Director General of Railroads; the federal
control act contemplated one control, one administra-
tion, one power for the accomplishment of the one pur-
pose, namely: the complete possession by governmental
authority to replace for the period provided the private
ownership theretofore existing. The Supreme Court of
the United States in the case of Missouri Pacific Rail-
road Company v. Ault, reported in 65 Law Edition, page
1087, speaking through Justice Brandeis, said:

"The plain purpose of the above provision was to
preserve to the general public the rights and remedies
against common carriers which it enjoyed at the time

the railroads were taken over by the President, except in so far as such rights or remedies might interfere with the needs of federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917; to cases where the cause of action arose before that date and the suit against the company was filed after it; and to cases where both cause of action and suit had arisen or might arise during federal operation. The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each transportation system. Operation was to be continued as theretofore, with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception, the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.

"This purpose congress accomplished by providing that 'carriers while under federal control' should remain subject to all then existing laws and liablities, and that they might sue and be sued as theretofore."

It is the contention of appellant that certain culverts in the railroad embankments were allowed to fill up so as to obstruct the free flow of the water and that this obstruction caused the water to be cast back upon his crops to their destruction. This complaint is not against the form or condition of the original embankment as constructed but rather, and we think entirely, against the manner of its maintenance during the years 1918, 1919 and 1920. If the culverts in the embankment were too small or choked by filth or other substances carried there by the water it was clearly the duty of the Director General to make the culverts sufficiently large for the passage of the water and to keep the culverts clear of obstruction so as to allow the water to freely pass. The railroad company had no right during the years 1918 and 1919 while the road was under federal control, to go upon the premises of the carrier for the purpose of either making or cleaning out culverts in the railroad embankments. The trial court, therefore, prop-

erly rejected the evidence offered by appellant Doss tending to prove that his crops had been destroyed by overflow caused by obstruction of the culverts during the years 1918 and 1919, while the Director General was in charge of the railroads.

After the evidence for both parties had been concluded at the trial the railroad company entered a motion for a verdict in its favor. While the court had the motion under consideration and before it had been passed upon by the court, appellant Doss, then plaintiff, moved the court to dismiss his action without prejudice, to which the defendant objected. The court sustained said objection and overruled plaintiff's motion to dismiss his cause. Appellant insists that the action of the court in refusing to allow him to dismiss his action was prejudicial error. It is provided by the Civil Code "that an action, or cause of action, may be dismissed without prejudice to a future action, (1) by the plaintiff before final submission of the case to the jury, or to the court, if the trial be by the court." Section 371. Construing the foregoing section we have held that a final submission to the jury is not made until all questions of law have been disposed of by the court, instructions and papers pertaining to the case actually delivered to the jury, and it is authorized without further interposition or control of the court to proceed to a judicial examination of the issue submitted to them. Vetrees v. N. N. & M. V. R. R., 95 Ky. 314. We have held in the case of N. W. Insurance Co. v. Barbour, 95 Ky. 7; and Ringo v. Farmers Bank, 101 Ky. 91; and Wilson v. Dupree, 24 R. 1456, that the plaintiff has the absolute right to dismiss his cause without prejudice at any time before the case is finally submitted to the jury if it be a common law action, or to the court if it be on the equity side of the docket, unless to do so would prejudice the rights of defendant upon his set-off, or counterclaim, where there is such pleading. There was no counterclaim or set-off filed by the defendant railroad in the instant case and appellant Doss had the right, under section 371 of the Civil Code, to dismiss his action without prejudice at the time the court overruled his motion made to that end. This was prejudicial error entitling appellant to a reversal of the judgment.

Judgment reversed for proceedings consistent with this opinion.

Judgment reversed.